NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOANNE TOMS and COLIN TOMS, | Civil Action No. 05-cv-2582 (PGS) |
| Plaintiffs, | |
| v. | **OPINION** |
| J.C. PENNEY COMPANY INC., and John Does 1-10 (fictitious names), | |
| Defendant. | |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court upon the motion of Defendant, J.C. Penney (hereinafter "Defendant") to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, Defendant's motion for summary judgment is granted.

I.

On or about April 1, 2005, Plaintiff Joanne Toms instituted a two-count complaint against J.C. Penney Company, alleging product liability in the Superior Court of New Jersey. The action was removed on or about May 16, 2005 based on diversity. The complaint alleges that Plaintiff suffered severe burn injuries when her bathrobe caught fire after attempting to light a cigarette. Plaintiff alleges that J.C. Penney put a defective bathrobe that was unreasonably flammable into the stream of commerce in violation of *N.J.S.A.* 2A:58C-1 *et seq*, and that Defendant failed to adequately

1

warn her of this design defect. Defendant moved for summary judgment on February 28, 2007, to dismiss the case in its entirety because Plaintiff failed to provide any expert testimony in support of her claims.

II.

On April 25, 2003, Plaintiff suffered severe burn injuries over 19% of her body when she attempted to a light a cigarette and her bathrobe caught fire. At the time of the accident, Plaintiff was a resident of Easter Seals, a group resident home located in Freehold, New Jersey.

Sometime between 12:30 a.m. and 1:00 a.m., Plaintiff went to smoke a cigarette alone on the porch. Before heading to the porch she put on her bathrobe which was customary for her. Plaintiff testified that it was a very windy night, and the wind carried the match out of her hand to the collar of her bathrobe. At that moment, she heard an "explosion" when the match came into contact with the collar and flames spread immediately upward towards her face and down her sleeve, as well as the remaining portions of the robe towards her legs. Plaintiff ran down the steps of the exterior porch and eventually removed the robe. Philip Wilensky, a residence counselor, aided a police officer with extinguishing the bathrobe. Mr. Wilensky testified that there was nothing unusual about his ability to extinguish the fire; however, Plaintiff noted "the whole thing caught on fire. And there was nothing left of the robe, maybe just a little piece of material." Mr. Wilensky, who did not see the fire start, testified that after hearing Plaintiff scream he opened the door to the patio stairs. At the top of the stairs he saw that Plaintiff's arms and shoulders were aflame. He did not notice any further flames. Mr. Wilensky also testified that the time that elapsed between Plaintiff exiting to the patio and her scream was approximately five to ten minutes. Mr. Wilensky did not mention that the fire was difficult to extinguish, or that it burned in any unusual fashion.

Easter Seals had the remains of the robe tested by Alliance Engineering Laboratories Inc., to determine its flammability characteristics and whether there was the presence of an accelerant. Alliance Engineering found that the remains of the robe were insufficient to perform flammability testing in accordance with 16 C.F.R. § 1610 "Standard for the Flammability of Clothing Textiles." However, it performed a simplified test of placing a lit match to the sample to determine flammability. According to the report, the robe caught fire, but burned at a slow rate with a dull flame. Based on same, Alliance Engineering Laboratories found that the sample was not highly flammable.

J.C. Penney procured an "exemplar robe" in the following manner. Plaintiff purchased the robe from J.C. Penney on August 25, 2002 with a First Mastercard belonging to her father, Jack Robbins. By taking the transaction reference identified on the credit card statement for J.C. Penney, Defendant located the case register tape for the August 25, 2002, purchase. This matched the transaction number on the credit card statement. This transaction tape listed a sale #6345 and identified a Snag Rst Terry Robe, bearing ID # 114/2210/050009. Using this identification number, it located a similar bathrobe produced by Kucker Home Textile Manufacturing Co., who had their robes tested by Intertek Testing Services. Defendant had the exemplar robe tested for conformance with federal guidelines for flammability. 16 C.F.R. § 1610. The expert results were that "the robe was constructed of a fabric which exceeds the federal requirements for the flammability of general wearing apparel as stated in 16 C.F.R. §1610." The sole opposition of Plaintiff to the "exemplar robe" was that it did not look similar to the robe she was wearing the evening of her accident; but

3

the Plaintiff did not object to the process used to identify the robe.[1] Therefore, Plaintiff relies entirely upon lay testimony to prove the robe was unreasonably flammable. The Court delayed resolution of this motion on two occasions in order to allow Plaintiff the opportunity to retain an expert and have the exemplar robe tested. Plaintiff has not provided an expert report.

III.

The court should grant a motion for summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir.1996). The inquiry before the court is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party. *See, Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir.1987).

A party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or

---

[1] The Court does not rely upon the testing of the exemplar bathrobe in reaching its decision. See *infra* note 3.

may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed.R.Civ.P. 56(f).

Plaintiff asserts two causes of action, design defect and failure to warn. Defendant moves for summary judgment based on Plaintiff's failure to procure any expert testimony establishing that the fabric of the robe was unreasonably flammable, an element of both the design defect and failure to warn claims. While Plaintiff maintains that expert testimony is not warranted, lay testimony in the record is insufficient to establish this element of her claims.

IV.

## Design Defect Under the New Jersey Products Liability Act

A design defect claim under the New Jersey Products Liability Act requires "that the product was defective, that the defect existed when the product left the Defendant's control, and that the defect caused injury to a reasonably foreseeable user." *Appleby v. Glaxo Wellcome, Inc.*, 2005 WL 3440440, *6 (D.N.J. Dec. 13, 2005)(unreported); *quoting Ortiz v. Yale Materials Handling Corp.*, 2005 WL 2044923, *2 (D.N.J.2005) (*citing Milanowicz v. The Raymond Corp.*, 148 F.Supp.2d 525, 528 (D.N.J.2001)). Product defects are classified as design defects, manufacturing defects, or warning defects. *N.J.S.A.* 2A:58C-2. To establish liability, a plaintiff must prove by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose. *N.J.S.A.* 2A:58C-2. Liability is imposed when the design is so defective as to render the product not reasonably safe. Restatement (Third) of Torts: Prod. Liab. § 2 (1998).

New Jersey courts have articulated a seven factor test to evaluate risk-utility. However, "the prevalent view is that, unless one or more of the other factors might be relevant in a particular case, the issue upon which most claims turn is the proof by plaintiff of a 'reasonable alternative design .

5

. . the omission . . . [of which] renders the product not reasonably safe." *Cavanaugh v. Skil Corp.*, 164 N.J. 1, 8 (2000) (*quoting Green v. General Motors Corp.*, 310 N.J.Super. 507, 517-18 (App.Div.1998).

Courts have further indicated that the only situation justifying a finding of design defect in the absence of an alternative design is a showing that "the product is 'so dangerous and of such little use that under the risk-utility analysis [the] manufacturer [should] bear the cost of liability to others.'" *Smith v. Keller Ladder Co.*, 275 N.J.Super. 280, 283-84 (App.Div.1994) (*quoting O'Brien v. Muskin Corp.*, 94 N.J. 169 (182); *See also, Truchan v. Nissan Motor Corp. in U.S.A.*, 316 N.J.Super. 554, 563-64 (App.Div.1998).

Plaintiff does not assert any alternative design theory[2]. As a consequence, Plaintiff must prove that the bathrobe is so dangerous that the manufacturer must bear the cost of liability to others. *Appleby v. Glaxo Welcome, Inc.*, 2005 WL 3440440, *6. Defendant maintains that the instant action requires expert testimony to not only address whether the fabric was unreasonably flammable[3], but also to eliminate other possible causes for the accident. On the other hand, Plaintiff contends that the courts have permitted a design defect claim to be submitted to the jury without expert testimony,

---

[2] Plaintiff has voluntarily withdrawn the claim based on the principle of res ipsa loquitor. Plaintiff also concedes that the she is not seeking punitive damages. (Pl. Opp. Br. at 8,13).

[3] While Defendant cites to its testing of the exemplar bathrobe against the Federal Flammability Standards, this alone is not dispositive of Plaintiff's claims. *Wilson v. Bradlees of New England, Inc.*, 96 F.3d 552 (1st Cir.1996) (holding that evidence of a garment meeting the federal flammability standards was relevant to, but not dispositive of, plaintiff's claims); *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 742 (6th Cir. 2000); *Simien v. S.S. Kresge Co.*, 566 F.2d 551 (5th Cir. 1978)

where lay testimony established that the fabric burned in an unreasonable manner. The plaintiff bears the burden of proof. *Lewis*, 155 N.J. at 570.

A plaintiff must also show that the defect was in existence while the product was in the control of the manufacturer and "negat[e] other causes of the failure of the product for which the defendant would not be responsible, in order to make it reasonable to infer that a dangerous condition existed at the time the [manufacturer] had control of the product." *Scanlon v. General Motors* Corp., 65 N.J. 582, 593-94, *Myrlak v. Port Authority*, 157 N.J. 84, 99 (1999) (citing *Jakubowski v. Minnesota Mining and Mfg.*, 42 N.J. 177, 184 (1964). A plaintiff could submit circumstantial evidence of a defect that may be sufficient to satisfy the requirement that something is wrong with the product. For example, in a Third Circuit case, there was evidence that the zipper "was stuck" and as a result the burning jacket could not be removed from the child. That is, the type of defect a lay person could find without expert testimony. *La Gorga v. Kroger*, 275 F. Supp. 373, 375 1967) *aff'd* 407 F.2d 671 (3d Cir. 1968). Alternatively, a plaintiff could submit the testimony of an expert who has examined the product and offers an opinion on the product's design. *Lauder v. Teaneck Volunteer Ambulance Corps.*, 368 N.J. Super. 320, 331 (App.Div.2004) (*see also Scanlon v. General Motors Corp.*, 65 N.J. 582 (1974)).

In this case, Plaintiff does not rule out other possible causes of the incident as is necessary to establish by circumstantial evidence that the robe was defective. It is just as likely that the weather conditions (strong wind) caused the match to explode, or the match contained an unusual accelerant, as it is that the robe is defective. It is well-settled law that where the allegedly defective product involves a complex instrumentality, a plaintiff is required to provide expert testimony. In *Lauder*, 368 N.J.Super. at 331, the court dismissed a design defect claim involving a gurney collapse

as there existed a number of reasons for the collapse. Without expert testimony, the jury could only speculate as to the cause of the collapse. Similarly, in *Appleby,* the court dismissed plaintiff's design defect claim when no expert testimony was offered to explain the defect in the forklift. *Appleby,* 2005 WL 3440440 at *6. Expert testimony is necessary to assist the fact finder in understanding "the mechanical intricacies of the instrumentality" and in excluding other possible causes of the accident. *Lauder,* 368 N.J.Super. at 331.

Plaintiff relies on five cases for her contention that unreasonable burning characteristics and burn behavior alone is sufficient to establish unreasonable dangerous of the fabric. This is far too broad a reading of these cases. *La Gorga v. Kroger Co.,* 275 F.Supp. 373, 378 (W.D.PA. 1967) aff'd 407 F.2d 671 (3d Cir. 1968); *Howard v. McCory Corp.,* 601 F.2d 133 (4th Cir. 1979); *DiMaso v. Wiebolt Stores, Inc.,* 37 Ill.App.3d 966 (1976)[4]; *Wilson v. Bradlees,* 96 F.3d 552 (1st Cir. 1996)[5]; *Hollister v. Dayton Hudson Corp.,* 201 F.3d 731 (2000). Chief among these five cases is the *La Gorga* case which emanates from this Circuit.

In *LaGorga v. Kroger Co.,* a child's coat was set on fire when a spark jumped from a trash can that contained smoldering garbage left unattended by school personnel. Initially, a spark burned

---

[4] *DiMaso* is clearly not relevant here. In *DiMaso,* unlike this case, the Plaintiff provided expert testimony. The issue decided by the circuit court is not in issue in this action. There the circuit court granted plaintiff's motion for a new trial because defense counsel improperly suggested that plaintiff and his parents were contributorily negligent for the fire. An issue not properly before the jury. 37 Ill.App.3d 966 (1976). Hence, the case is distinguishable from the one presented here.

[5] *Wilson v. Bradlees* fails to support Plaintiff's contention that the evidence offered here is sufficient to establish a prima facie case of design defect. 96 F.3d 552 (1st Cir. 1996) In *Wilson,* the court was not faced with an issue regarding the sufficiency of evidence in establishing a prima facie case. Rather, it determined the federal Flammable Fabrics Act did not preempt common law design defect claims and their standards.

8

a nickel size hole in the jacket. A playmate attempted to extinguish the fire by rubbing dirt on it. When this failed, the playmate attempted to remove the jacket; but the zipper "was stuck". At that point, plaintiff ran home. There were witnesses who described that "he was a jet, because there was a big flame shooting out the back of the jacket." A retired firefighter described the plaintiff as a "ball of fire." The firefighter used a pillow to squelch the flames, but that didn't phase the fire. In fact, the fireman stated it was like a "blow torch" and the blaze engulfed the plaintiff's head. He then threw the boy to the ground and some of the fabric gave way. As he discarded the fabric, it ignited again. Eventually, with the aid of a blanket, the fire was smothered. The fireman testified that in his 25 years of duty, "no cloth that I have seen burned like that . . . It was a hot and large flame." *Id.* at 377-78. The plaintiff also presented expert evidence. The expert opined that 80-90% of cotton fabrics are "treated with flame retardant substances, but the cotton outer shell of this jacket was not treated." In addition, the cost of applying fire retardant is inexpensive. *Id.* at 379.

The case here is unlike *La Gorga* as the facts are strikingly different. There is no evidence that the robe had a malfunctioning zipper or other issue which prevented removal. There is no such evidence that plaintiff look like a "ball of fire" or that a firefighter noted any unusual characteristics of the burning fabric. There is no expert evidence suggesting improper manufacturing as in *La Gorga* where plaintiff failed to use fire retardants. There is no evidence which rules out other possible causes of the burning like the match or the strong winds. Plaintiff's statement that it was "like an explosion" is insufficient evidence upon which any reasonable jury could determine that the robe was defective.

In *Howard v. McCory Corp.*, 601 F.2d 133 (4th Cir. 1979), the circuit court found that the trial court improperly entered a judgment notwithstanding the verdict (JNOV) in favor of the

9

defendant due to the absence of scientific tests and standards to determine the flammability of the pajamas. The circuit court rejected the district court's finding that since there were no tests on the remains of the pajamas, there was no evidence in the record from which a jury could find that the pajamas were defective as charged. *Id.* at 137. Contrary to the district court's conclusion, the circuit court found that it was "perfectly permissible for the jury to find that the product was dangerously inflammable from evidence of its "burning behavior and characteristics," and from proof that the product "ignited easily, [and] burned rapidly and intensely with a high degree of heat." *Howard v. McGrory*, 601 F. 2d 133, *137 (citing LaGorga v. Kroger* Co. at 378). Unlike this action, in *Howard*, both parties submitted expert opinions regarding compliance with federal standards based on exemplar pajamas. These tests discussed the flammability characteristics of the material and the burn rates of the material.

Plaintiff also relies on *Hollister v. Dayton Hudson Corp.*, however this reliance is misplaced. In *Hollister*, the plaintiff supplied four expert opinions regarding the flammability of her shirt. In that action she suffered burns when the tail of her shirt contacted an electric stove burner. The circuit court upheld the lower court's grant of summary judgment to the manufacturer on the design defect claim. *Id.* at 735, 741. Applying Michigan law, the court found that Plaintiff had failed to establish a prima facie case, by failing to present a proposed alternative design. The court did not opine on whether circumstantial evidence alone was sufficient to establish a prima facie case of design defect.

In this case, the testimony provided by Plaintiff and that of a single eye witness does not demonstrate that the robe's burning behavior and characteristics were "unusual and dangerous". The eye witness stated that he assisted in putting out the fire. Here the lay testimony does not establish unreasonable flammability as in *La Gorga*, 407 F. 2d 671 (3d Cir. 1968). Expert testimony

10

would be required to assist the fact finder in understanding the burning behavior and characteristics of the robe. Moreover, it would eliminate any other potential causes for the incident (wind or the match). *Brech v. J.C. Penney Co.*, 698 F.2d 332, 335 (8th Cir. 1983) (upholding the district court's dismissal of Plaintiff's design defect and failure to warn claims arising from the burning of her clothing as the lay testimony did not establish unreasonable flammability).

During oral argument the court inquired if Plaintiff would like the opportunity to retain an expert and test the exemplar robe obtained by Defendants. Offering no objection, Plaintiff agreed to same. Despite two court orders providing the opportunity to do so, Plaintiff has failed to present any expert report. (Docket Entries #29 & #32). Plaintiff has failed to negate other potential causes of the fire, and thus failed to establish the causation element of her design defect claim. Defendant's request for summary judgment on this claim must be granted.

**Failure to Warn Claim**

Defendants maintain that Plaintiff's inability to establish a defect in the robe is fatal to its failure to warn claim. Plaintiff maintains that the defect has been established through the lay testimony in the record and that the failure to warn claim stands.

"In New Jersey, product manufacturers have a general duty to warn of the dangers of using their products, and are not absolved of this responsibility simply because the danger might be obvious." *See Campos v. Firestone Tire & Rubber Co.*, 98 N.J. 198 (1984). However, there is no duty to warn of obvious dangers which are 'so basic to the functioning or purpose of the product – for example, the fact that a match will burn – that a warning would serve no useful purpose.' *Id.* at 208. *See Vallillo v. Muskin Corp.*, 212 N.J.Super. 155, 162 n. 4, 514 A.2d 528 (App.Div.1986); *Brech v. J.C. Penney Co.*, 698 F.2d at 335.

11

In a failure to warn case, the alleged product defect is not a flaw in the structure or design of the product itself. Rather, the defect is the absence of a warning to unsuspecting users that the product can potentially cause injury. *D'Allessandro v. Bugler Tobacco Co.*, 2006 WL 3677854, * 3 (D.N.J. Dec. 7, 2006); *Freund v. Cellofilm Properties, Inc.*, 87 N.J. 229, 242 (1981). To prevail on a claim for failing to adequately warn, a plaintiff must establish that (1) the product did not contain an adequate warning; (2) the inadequacy in the warning existed when the product left the defendant's control; (3) the inadequate warning caused injury to the plaintiff; and (4) the plaintiff was a reasonably foreseeable user of the product. *Zaza v. Marquess & Nell, Inc.*, 144 N.J. 34, 675 (1996). See, *N.J.S.A.* 2A:58C-2. Neither party states that the bathrobe contained any warning with regard to its potential flammability. Plaintiff appears to be alleging that the bathrobe required a warning as it was unreasonably flammable for its intended use, i.e., being worn while smoking a cigarette. Plaintiff bears the burden of producing facts indicating that "the absence of a warning was a proximate cause of his harm." *Coffman v. Keene Corp.*, 133 N.J. 581, 594. See also, *Shelcusky v. Garjulio*, 172 N.J. 185, 206 (2002)(which held that while "ordinarily the jury considers issues of proximate cause, courts may resolve for themselves the question of legal or proximate causation if they conclude that no jury could find such a causation).[6]

Plaintiff needs to establish a duty to warn. If proceeding under a theory of strict liability, this is accomplished by showing that "knowledge of the defect existed in the industry." Once this is

---

[6] New Jersey courts have adopted a heeding presumption standard that lessens a plaintiff's burden of establishing product defect causation in failure to warn cases. This presumption shifts the "Plaintiff's burden on the element of causation away from the proof that the Defendant's failure to warn caused the Plaintiff's exposure . . . and toward proof that the Defendant's product caused the Plaintiff's injury or illness. *James*, 155 N.J. at 297. This presumption comes into play only after Plaintiff has established Defendant's duty to warn. *Magistrini v. One Hour Martinizing Dry Cleaning*, 109 F.Supp.2d 306, 312 (D.N.J. 2000).

12

established, this knowledge will be imputed to the manufacturer. If proceeding under a theory of negligence, a plaintiff must demonstrate that the specific defendant knew or should have known of the potential hazards of the product. *Id.*, *citing James v. Bessemer Processing Co., Inc.*, 155 N.J. 279, 297 (N.J. 1998). Under New Jersey law, a manufacturer has a continuing duty to warn of dangers discovered after the product leaves its control. *N.J.S.A.*2A:58C-4. Plaintiff has failed to come forward with any evidence establishing that the bathrobe required a warning because it was unreasonably flammable. *Henning v. Casa DiBertacci, Inc.*, 2007 WL 1461170 (dismissing failure to warn claim as the danger of the use was obvious).

There is nothing in the record which indicates that the manufacturer either knew of a defect by industry knowledge or that they should have known of the potential hazards of the product. There is no assertion that the product became more dangerous because of advances in fabric that made the fabric of this bathrobe unreasonably dangerous. *Molino v. B.F. Goodrich Co.*, 261 N.J.Super 85, 93 (App. Div. 1992). In *Molino*, plaintiff's expert testified that the industry knew of defects in the tire product, thus establishing a duty to warn. *Id. See also, Griesenbeck v. American Tobacco Co.*, 897 F.Supp. 815, 820 n. 3 (D.N.J.1995) ("[W]ithout a duty to warn, there cannot be any failure to warn")

In this case, Plaintiff relies entirely upon the contention, dismissed above, that lay testimony is sufficient to demonstrate the unreasonable flammability of the robe. There is nothing in the record that would permit a reasonable jury to conclude that a lack of warning regarding the robe proximately caused Plaintiff's injuries. *Appleby*, 2005 WL 3440440, *5. Plaintiff asserts that the mere existence of her injury satisfies her burden. This Court disagrees. The existence of an injury without more is insufficient to establish that an adequate warning would have prevented her harm. "An inference of defectiveness may not be drawn from the mere fact that someone was injured." *Zaza v. Marquess and Nell, Inc.*, 144 N.J. 34, 49 (1996).

For the foregoing reasons, Defendant's motion for summary judgment is granted.

_____
PETER G. SHERIDAN, U.S.D.J.

September 28, 2007